UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Michael Farley,

    Plaintiff,

    v.

Hartford Life and Accident Ins. Co.,

    Defendant.

Case No. 2:18-cv-722

Judge Michael H. Watson

Magistrate Judge Vascura

## OPINION AND ORDER

Plaintiff Michael Farley ("Plaintiff") sued Hartford Life and Accident Insurance Company ("Defendant"), asserting a claim for long-term disability benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff and Defendant both move for judgment on the administrative record. ECF Nos. 17 & 19. For the following reasons, Plaintiff's motion is **GRANTED in part** and Defendant's is **DENIED**.

### I.    FACTS

Plaintiff is a disabled military veteran, who was employed as a Wal-Mart shift manager until he injured his back in September 2011. ECF No. 14, PAGEID 151; 14-2, PAGEID 671–72. As a Wal-Mart employee, he participated in a long-term disability plan ("Plan") through Defendant. ECF No. 14-12, PAGEID 681. He applied to Defendant for long-term disability benefits in November 2011. ECF No. 14-2, PAGEID 671–75.

Dr. Paul Allencherril, one of Plaintiff's doctors, determined that Plaintiff was disabled by "severe low back pain" which radiated from his hips and legs and

caused numbness. ECF No. 14-2, PAGEID 676. Dr. Allencherril opined that Plaintiff was substantially limited in sitting, standing, lifting and walking, and that these restrictions would continue indefinitely. ECF No. 14-2, PAGEID 677.

On January 18, 2012, Defendant found Plaintiff disabled from his "own occupation" and approved his disability benefits application. ECF No. 14, PAGEID 238–40. On February 1, 2013, Defendant further concluded pursuant to the Plan that Plaintiff was disabled not just from his "own occupation" but also from "any occupation" as defined by the Plan. ECF No. 14, PAGEID 205. Defendant directed Plaintiff to apply for Social Security Disability Benefits ("SSDI"), and Plaintiff was approved for SSDI on August 4, 2012. ECF No. 14-10, PAGEID 607–10.

From 2011 to 2018, Defendant paid Plaintiff disability benefits. During this time, Plaintiff had other medical issues arise, including a knee replacement, gallbladder surgery, and osteoarthritis. ECF No. 14-5, PAGEID 373, 393–41, 402, 406, 614–21. He also had two MRIs, one in 2015 and another in 2017, that documented continued back deterioration. ECF No. 14-1, PAGEID 251; ECF No.14-2, PAGEID 309–10.

On February 19, 2018, Defendant notified Plaintiff that it determined he was no longer disabled and terminated his benefits. ECF No. 14, PAGEID 163–69. Plaintiff appealed the initial termination arguing that Defendant failed to consider the opinions of the doctors primarily responsible for treating his back problems. Instead, the letter relied only on the doctors who treated Plaintiff's

other medical ailments, which did not form the basis for his initial disability determination. See ECF No. 14, PAGEID 166.[1]

On administrative appeal, Plaintiff pointed out that Defendant consulted with the wrong doctors and provided additional doctors' names. Defendant thereafter referred Plaintiff's case for a file review, conducted by Dr. Patrick Barrett. ECF No. 14-1, PAGEID 248–53. Dr. Barrett did consult with the current doctor responsible for treating Plaintiff's back issues, Dr. Alex Minard. Dr. Minard's opinion was that Plaintiff was "totally and permanently disabled due to his limitations in pain and range of motion of his spine." ECF No. 14-1, PAGEID 251. Dr. Barrett agreed with Dr. Minard's opinion regarding Plaintiff's limitations, but he did not agree with Dr. Minard on Plaintiff's restrictions. ECF No. 14-1, PAGEID 251. Defendant relied on Dr. Barrett's file review to conclude that Plaintiff could perform sedentary work. ECF No. 14-1, PAGEID 253.

On May 2, 2018, Defendant denied Plaintiff's appeal, based entirely on Dr. Barrett's opinion. ECF No. 14, PAGEID 154–58.

## II. STANDARD

The motions at issue are for judgment on the administrative record regarding a denial of benefits under ERISA. Courts generally review the denial of ERISA claims *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101,

---

[1] Dr. Krivchenic was the doctor treating Plaintiff's knee; Drs. Koch and Conner treated his gallbladder; and Dr. Tappel treated his osteoarthritis. ECF No. 14-5, PAGEID 373, 393–402, 406, 416–21.

115 (1989). If, however, the plan gives the administrator discretionary authority to determine eligibility for benefits or to interpret the meaning of the terms of the plan, courts review the denial of benefits under the arbitrary and capricious standard. *Daft v. Advest, Inc.*, 658 F.3d 583, 594 (6th Cir. 2011). When reviewing claims for the denial of ERISA benefits, the Court is confined to the evidence in the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).

The parties agree that the Plan at issue here gives the administrator discretionary authority such that Defendant's denial of Plaintiff's benefits is entitled to deferential review. Review for arbitrary and capricious error is "highly deferential." *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001) (citing *Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996)). But an arbitrary and capricious standard of review does not render the Court's review inconsequential or mean that the Court serves to rubber stamp the administrator's decision. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006). The Court's review "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id.* (internal quotation marks and citation omitted). The Court "will uphold a plan administrator's decision if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Balmert v. Reliance Std. Life Ins. Co.*, 601 F.3d 497, 501 (6th Cir. 2010) (internal citations and quotation marks omitted). "Evidence is substantial if 'a reasonable mind

might accept [it] as adequate to support a conclusion.'" *Durbin v. Columbia Energy Grp. Pension Plan*, 522 F. App'x 341, 345 (6th Cir. Apr. 17, 2013) (internal citation omitted). The plaintiff bears the burden of proving that the administrator's decision was arbitrary and capricious. *Farhner v. United Trans. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011).

This standard is tempered, however, by a plan administrator's conflict of interest. An inherent conflict of interest exists where the entity that administers an ERISA plan both funds benefits and determines eligibility for them. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112–14 (2008). The Court must consider this conflict as a factor in determining whether the denial of benefits was arbitrary and capricious. *Id.* at 115. The significance of this factor depends on the circumstances of each particular case. *Id.* at 117 (citations omitted). The conflict "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision . . . [and] should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy . . . ." *Id.* Conflict of interest is only one of many factors to consider, however, and "[i]f the decision was nevertheless supported by substantial evidence, it ought to be upheld." *Scheib v. Ret. Program Plan for Emps. of Certain Emp'rs at the U.S. Dep't of Energy Facilities at Oak Ridge, Tenn.*, 488 F. App'x 122, 128 (6th Cir. July 5, 2012) (citation omitted).

### III. ANALYSIS

Plaintiff argues Defendant's termination of long-term disability benefits was arbitrary and capricious because Defendant improperly relied on the file-reviewer's opinion over Plaintiff's specialist's opinion and there was not otherwise evidence that his condition had improved. Defendant contends that its decision is supported by substantial evidence in the record.

#### A. Whether Defendant improperly considered the opinion of the file reviewer over Dr. Minard

Plaintiff argues that Defendant unreasonably credited the file reviewer's opinion over his own physician's opinion.

On May 2, 2018, Defendant sent Plaintiff its final termination letter. ECF No. 14, PAGEID 154–58. In the letter, Defendant summarized Plaintiff's medical history and the reasons for his initial termination. It explained that it had hired Dr. Bennett to conduct a file review for the appeal. It then summarized Dr. Bennett's opinion. Because the basis for Plaintiff's appeal was that Defendant did not consult the doctors primarily responsible for treating his back pain, Dr. Bennett consulted with the doctors that treated Plaintiff's back problems as part of that review. One of the doctors had not seen Plaintiff recently and, thus, did not feel qualified to comment on his current restrictions. Dr. Minard, however, did provide Dr. Barrett with his opinion that Plaintiff was "totally and permanently disabled" due to his limitations of pain in multiple areas and reduced spine range of motion. ECF No. 14-1, PAGEID 251.

Dr. Barrett's file review described Plaintiff's medical history as follows:

> [Plaintiff has] a history of hypothyroidism, gall bladder disease, status post cholecystectomy, Chiara malformation status post repair, sleep apnea, osteoarthritis in his spine, right thumb, and left knee, degenerative disc disease throughout his spine, chronic headaches, chronic pain status post multiple spine surgeries and left total knee arthroplasty . . . [and has complaints of] pain (neck, low back, right thumb), poor sleep, and decreased range of motion of his cervical and lumbosacral spine. None of these problems have improved despite medications, pain procedures such as epidural steroid injections and radiofrequency ablation procedures, physical therapy, and cervical spine surgery and redoing his lumbosacral spine surgery.

ECF No. 14-1, PAGEID 251.

Likewise, Dr. Barrett's own medical analysis of Plaintiff's conditions was as follows:

> Overall in the medical record, there is good consistency and consensus that [Plaintiff] has pain in his low back, neck, head, left knee, and right thumb and that he does not have any neurologic symptoms such as paralysis, bowel or bladder incontinence. Sometimes there are mentions in the record of the claimant complaining of numbness/tingling but not consistently and not clear where. Physical examinations consistently revealed limited/reduced range of motion of the cervical and lumbosacral spine and normal strength throughout. Pretty consistently it is noted that the claimant has a decreased left patella reflex compared to the right side. Imaging studies have shown that the claimant is status post Chiari malformation repair, cervical spine surgical hardware is intact, and that there [are] multiple degenerative changes seen throughout the spine and the right thumb carpal metacarpal joint. There is credible evidence in the medical record to support diagnoses of osteoarthritis throughout the spine, right thumb carpal metacarpal joint, and left knee. Additionally, there is also credible evidence to support a previous diagnosis of a left LF radiculopathy as shown by the

decreased left patella reflex and CT myelogram from 10/27/11 which showed stenosis of the left neural foramen at L3/4.

ECF No. 14-1, PAGEID 252.

Nonetheless, Dr. Barrett, without explaining why he reached a different conclusion than Dr. Minard, provided the following conclusion on Plaintiff's restrictions and limitations:

> For the period of 2/19/18 onward, the claimant is limited by pain (headaches, neck, right thumb, low back), decreased range of motion of his cervical and lumbar spine. He has the ability to sit continuously for 2 hours at a time up to 8 hours a day with usual breaks; he can intermittently stand for an hour at a time up to 4 hours a day. He can walk up to 30 minutes at a time for up to 2 hours a day. He can occasionally lift/carry/push/pull up to 20 lbs. with bilateral upper limbs. He can drive up to 2 hours at a time up to 8 hours a day with usual breaks. He should never climb, balance, bend, stoop, kneel, crouch, or crawl. He can frequently reach at waist level/above shoulder level and below waist level with bilateral upper limbs. He can frequently handle and keyboard with his right. He has no restrictions with handling and keyboard on his left. He has no restriction with feeling with either hand.
>
> . . .
>
> Per the most recent medication list available which is from 4/3/18, the claimant is taking medications that could affect his functional capacity. Those medications are hydrocodone/acetaminophen and topiramate. Both of these medications can cause decreased cognitive function. It should be noted, however, that these adverse side effects were not mentioned to be an issue in the medical record by the claimant.

ECF No. 14-1, PAGEID 253.

In its final denial letter, Defendant simply copied Dr. Barrett's conclusions on restrictions and limitations and concluded that "based on the results of the independent medical record review we have determined that you are capable" of performing sedentary work. ECF No. 14, PAGEID 157. Defendant offered no explanation of why it credited Dr. Barrett's opinion on Plaintiff's limitations over Dr. Minard's opinion that Plaintiff was totally disabled.

Under the Sixth Circuit Court of Appeal's ERISA precedent, a plan administrator's reliance on a reviewing doctor's opinion instead of a claimant's treating physician is not categorically arbitrary and capricious. Instead, the Sixth Circuit has found that,

> [W]hen a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.

*McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003).

But a denial of benefits that "merely describes the medical terminology by various physicians in their diagnoses of [the claimant's] condition without any reasoning as to why those diagnoses would permit [the claimant] to function in the workplace" cannot be considered a "reasoned" decision. *See Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 619 (6th Cir. 2006).

What is lacking from both Dr. Barrett's file review and Defendant's final termination letter is a reason for *why* Dr. Barrett disagreed with Dr. Minard's

conclusions that the diagnoses rendered Plaintiff disabled. Dr. Barrett said in his review that he agreed with Dr. Minard on Plaintiff's restrictions, noted in the medical history that Plaintiff's condition had not improved with treatment, and found "good consistency and consensus" supporting Plaintiff's complaints of pain, as well as objective evidence of physical exams supporting Plaintiff's diagnoses and limitations. See ECF No. 14-1, PAGEID 251–52. The only information Dr. Barrett provided with respect to Dr. Minard's opinion was that he and Dr. Minard disagreed on Plaintiff's restrictions, but nowhere in his report does he explain the basis for that disagreement.

Defendant does not directly address the failure to provide a reason; rather, it argues that Dr. Barrett reviewed the entire file and made conclusions based on that. But that is not responsive to the issue of whether Dr. Barrett engaged in a reasoned decision-making process. Rather, Defendant must provide a reason for choosing one opinion over another. See *Shaw v. AT&T Umbrella Ben. Plan No. 1*, 795 F.3d 538, 549 (6th Cir. 2015) ("[A] plan may not reject summarily the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion." (internal quotation marks and citations omitted)); *Koning v. United of Omaha Life Ins. Co.*, 627 F. App'x 425, 434 (6th Cir. 2015) ("The Plan simply contradicts the medical findings without explaining why, and without offering any evidence to contradict these medical observations, even though a [FCE] 'is generally a reliable and objective method of gauging the extent one can complete work-related tasks.'" (quoting *Shaw*, 795 F.3d at 548)); *Majeski v.*

*Metro. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009) ("[A] plan administrator's procedures are not reasonable if its determination ignores, without explanation, substantial evidence that the claimant has submitted that addresses what the plan itself has defined as the ultimate issue . . . ."); *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005) (arbitrary and capricious to rely on file reviewer who mentioned treating and examining physicians by name but did not explain why he rejected their opinions).

Defendant also argues that substantial evidence still supports its decision to terminate benefits because it based its decision not just on Dr. Barrett's file review but also on Dr. Tappel's opinion. Dr. Tappel, Plaintiff's family physician who was treating his osteoarthritis, completed an Attending Physician Statement ("APS") on August 26, 2017, in which he listed Plaintiff's primary condition as osteoarthritis. ECF No. 14-4, PAGEID 352. Prior to Defendant's initial decision to terminate, on October 5, 2017, Defendant sent a letter to Dr. Tappel seeking clarification of his August 2017 APS. ECF No. 14-4, PAGEID 356–57. Defendant's letter to Dr. Tappel explained that: "Recent medical care . . . on 8/10/2017 . . . noted severe osteoarthritis of multiple locations as well as severe cervical and lumbar degenerative disc disease with previous treatments failed to include PT, surgery, and injections." *Id.* at 356. Given those findings, Defendant sought clarification because: "The records do not support [light work] level of functionality and is unlikely that claimant could perform in a consistent and reliable work schedule." *Id.* In other words, Dr. Tappel's functional assessment

did not align with his previous reports of Plaintiff's medical issues and limitations. In response to Defendant's follow-up letter, Dr. Tappel marked "Sedentary" on the form for Plaintiff's functionality and wrote that his selection was based on his August 26, 2017 interview with Plaintiff. *Id.* at PAGEID 357. Dr. Tappel did not mark whether sedentary activities could be performed full time or part time.[2] *See id.* The initial termination of benefits was based, in part, on Dr. Tappel's APS. *See* ECF No. 14, PAGEID 166.

Setting aside the inconsistencies even Defendant recognized with Dr. Tappel's APS, the Court finds Defendant's reliance on Dr. Tappel's conclusions unpersuasive. Defendant's final termination letter unequivocally stated that it determined that Plaintiff could perform sedentary work "[b]ased on the results of the independent medical record review." ECF No. 14, PAGEID 157. Likewise, nowhere does Dr. Barrett indicate that he agreed with Dr. Tappel's findings or relied on his opinion. He did not even speak with Dr. Tappel, only Dr. Minard. Given this, the Court cannot find that Defendant's decision to deny benefits was based on Dr. Tappel's conclusions if the record does not support that proposition.

---

[2] This is contrary to Defendant's assertion that Plaintiff's attending physician found Plaintiff was able to perform full time sedentary work. *See* Def.'s Resp. 1, ECF No. 18.

### B. Whether Defendant was required to show that Plaintiff's condition had improved

Plaintiff next argues that because Defendant had previously determined he was completely disabled, it was required to show his condition had improved before terminating his benefits.

In support, Plaintiff relies on *Kramer v. Paul Revere Life Insurance Co.*, 571 F.3d 499, 507 (6th Cir. 2009). In *Kramer*, the Sixth Circuit reversed a district court's partial determination that the insurance company's denial of benefits was not arbitrary and capricious, in part, because "there [wa]s no explanation for the decision to cancel benefits that had been paid . . . based upon the initial determination of total disability in the absence of any medical evidence that the plaintiff's condition had improved during that time." *Id.*

Similarly here, Plaintiff contends that there is no record evidence of improvement in the record. Even though Dr. Barrett disagreed with Plaintiff's attending physician's recommended restrictions, he nevertheless still acknowledged that there was "consistency and consensus" of Plaintiff's medical conditions, *see* ECF No. 14-1, PAGEID 252, and also noted that none of the medical issues had improved, despite various attempts at treatments. *Id.* at 248.

Defendant argues that it does not have a burden to prove improved conditions; rather, it is Plaintiff's burden to prove that he was disabled as defined by the Plan. Def.'s Resp. 13, ECF No. 18 (citing *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 700–01 (6th

Cir. 2014) ("To succeed in his claim for disability benefits under ERISA, Plaintiff must prove by a preponderance of the evidence that he was 'disabled,' as that term is defined in the Plan.")). The Court finds Defendant's first argument unpersuasive. *Javery* discusses a plaintiff's burden of proof in his ERISA appeal; it does not absolve an insurance company from having to provide a reason for its reversal of benefits for the same conditions it had previously found to be disabling. The Court, therefore, does not find *Javery* to contradict *Kramer*.

Defendant also argues that *Kramer* did not create a new rule requiring a plan administrator to have new evidence of improvement before terminating benefits. *Id.* at 14 (quoting *McCollum v. Life Ins. Co. of N. Am.*, 495 F. App'x 694, 704 (6th Cir. 2012) ("To be sure, *Kramer* does not create a rule that when a plan administrator suddenly changes course, the administrator must have new evidence of improvement.")). But the next sentence of *McCollum* actually supports Plaintiff's argument, not Defendant's, because it explains that "in those circumstances, the plan administrator must have some reason for the change based on any number of factors. . . includ[ing] evidence of improvement, a better definition of the participant's medical condition, or any new skills the participant has acquired." *Id.* (citing *Morris v. Am. Elec. Power Long-Term Disability Plan*, 399 F. App'x 978, 984 (6th Cir. Oct. 15, 2010)). *McCollum* concluded that the insurance company's lack of any convincing reason, "and its sudden about face casts doubt on its conclusion that [the plaintiff] is capable of light work after all these years." *Id.* at 704. Like in *McCullum*, here, Defendant not only failed to

cite evidence of improved conditions but also failed to offer *any* basis for its "about face."

## IV. CONCLUSION

At bottom, Defendant's failure to provide Plaintiff or this Court with a reason for why Plaintiff is no longer considered disabled under the Plan is arbitrary and capricious.[3] Thus, the Court "may either award benefits to [Plaintiff] or remand to the plan administrator." *Elliott*, 473 F.3d at 621. Unless the Court finds that Plaintiff was clearly entitled to benefits, the Court must remand for the plan administrator to conduct a full and fair inquiry. *Id.* The Court cannot say with certainty whether Plaintiff is entitled to benefits. Therefore, the Court **REMANDS** this case to Defendant for full and fair review of whether Plaintiff was disabled under the terms of the Plan beyond February 19, 2018.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**

---

[3] Given the Court's conclusion here, it need not consider Plaintiff's other arguments as to why Defendant's decision was arbitrary and capricious.